UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 24–265 (1) (TNM) |
| v. | : | |
| | : | |
| ROBERT P. BURKE, | : | |
| | : | |
| YONGCHUL "CHARLIE" KIM, and | : | |
| | : | |
| MEGHAN MESSENGER, | : | |
| | : | |
| | : | |
| Defendants. | : | |

**UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PREJUDICIAL SURPLASAGE AND EXCLUDE IRRELEVANT EVIDENCE**

The United States of America opposes the Defendants' Motion to Strike Surplusage and Exclude Irrelevant Evidence, ECF Nos. 60-1, 71 at 7-8. The Defendants argue that the allegations in paragraph 45 should be stricken as surplusage and that any evidence relating to those allegations should be excluded from trial. The Defendants' arguments lack merit and should be denied because they cannot meet their burden to show that the allegations are irrelevant, prejudicial, and inflammatory.

**I.    Background**

On May 30, 2023, the grand jury returned a five-count Indictment charging each Defendant with various crimes relating to their bribery scheme and subsequent coverup. Specifically, Defendant Robert P. Burke ("Burke") was charged with four counts, including one count each of 18 U.S.C. § 371 (Conspiracy), 18.U.S.C. § 201(b)(2) (Bribery), 18 U.S.C. § 208(a) (Acts Affecting a Personal Financial Interest), and 18 U.S.C. § 1001(a)(1) (Concealment of Material Facts). The Indictment further charged Defendant Yongchul "Charlie" Kim ("Kim") and Defendant Meghan Messenger ("Messenger") with one count each of 18 U.S.C. § 371 (Conspiracy) and 18 U.S.C.

1

§ 201(b)(1) (Bribery). On September 25, 2024, this Court severed the Defendants, and set Burke's trial for February 19, 2025, and Kim and Messenger's trial for May 6, 2025. On November 25, 2024, Kim and Messenger filed a Motion to Strike Surplusage and Exclude Irrelevant Evidence. ECF No. 60-1. On November 29, 2024, Burke joined that Motion. ECF No. 71 at 7-8. Specifically, the Defendants seek to strike, and preclude evidence relating to, the allegations in paragraph 45.

## II.     The Corrupt Agreement

The Indictment alleges that Burke, while employed as a four-star Admiral in the United States Navy, conspired with Kim and Messenger and accepted a lucrative offer of future employment from Kim and Messenger in exchange for (1) directing a government contract to Company A; and (2) delaying his retirement six months so that he could spend those six months influencing senior Navy Officers to award another contract to Company A. *See* ECF No. 1, ¶¶ 22-25, 35. Burke's offer of employment was contingent on his ability to fulfill his end of this corrupt agreement. *See id.* at ¶¶ 22-25, 31 (Kim stating that Burke, "wants to work for us but we're asking for a deal first"), 35.

The Indictment alleges that Burke wanted to retire from the Navy and join Company A to obtain the profitable benefits Kim and Messenger offered, including a salary of at least $500,000 and stock options, *id.* at ¶ 35c, so he got to work using his position and influence to fulfill the terms of his "deal" with Kim and Messenger, *id.* at ¶ 24-25. To fulfill the first requirement of the Defendants' corrupt agreement, Burke "ordered Person 2 to provide a contract to Company A, to make sure the contract was in place by January 10, 2022, and for it to be valued at approximately $350,000." *Id.* at ¶ 38. Burke's order worked—Company A was awarded a contract valued at $355,135 to providing training to Navy officials in Naples, Italy, and Rota, Spain. *Id.* at ¶ 41, 44. But helping Company A obtain this $355,135 contract with the Navy was not the only condition Burke had to fulfill if he wanted to join Company A—he also had to postpone his retirement six

months so that he could use his position and influence to help Company A obtain additional contracts. *See id.* at ¶¶ 24, 35c. Burke got to work on this as well, emailing foreign military officers and other high ranking Navy officials to promote Company A, while concealing that Company A had offered him a job. *See id.* at ¶ 45. To demonstrate that he had fulfilled his end of their corrupt agreement, Burke included Kim and Messenger in his efforts. *See id.* at ¶ 45b.

After Burke fulfilled his end of the corrupt agreement, by ensuring Company A obtained a contract with the Navy and delaying his retirement to give him the opportunity to promote Company A to his associates, it was time for Kim and Messenger to fulfill their end of the corrupt agreement—and they did. Ultimately, Burke joined Company A as a "Senior Partner." *Id.* at 47.

### III. Argument

The Defendants' Motion seeks to strike paragraph 45 from the Indictment as surplusage pursuant to Federal Rule of Criminal Procedure 7(d) (Rule 7(d)).[1] The Defendants also argue that the Government should be precluded from presenting any evidence relating to the allegations in paragraph 45 because any such evidence is inadmissible pursuant to Federal Rules of Evidence 401 and 403. Paragraph 45 alleges:

> 45.    BURKE remained in the Navy and promoted Company A to senior Navy officers – while suggesting another contract for Company A to train a larger portion of the Navy – without disclosing his prior employment offer from KIM and MESSENGER. For example:
>
>> a. On March 12, 2022, BURKE emailed a Foreign Military Officer asking him/her to report back about the Foreign Military's efforts to contract with Company A because such information would advance Company A's efforts to market Company A to a wider U.S. Navy audience.
>>
>> b. On March 14, 2022, BURKE sent an email introducing KIM and MESSENGER to Person 4, a four-star Navy Admiral who

---

[1] If this Court does not send the Indictment back to the Jury, then the Defendant's request to strike is effectively moot. Even so, the Government responds to the Defendants' Motion in its entirety.

3

    oversaw training programs for Navy recruits' "pipeline schools." BURKE promoted Company A's training program to Person 4.

  c. On March 28, 2022, BURKE forwarded an email to Person 4 that contained a proposal for Company A to provide training to the Foreign Military. BURKE commented that the Foreign Military's proposal had "sort of the same components I would see us using."

  d. On May 25, 2022, BURKE emailed a Senior Foreign Military Official, stating, "I wanted to write you a short note on [Company A] – something I know the [Foreign Military] is exploring." BURKE promoted Company A's training, said that he had "put together a proposal for wider US Navy implementation," and added, "my team is standing by as your local US Navy team to help in any way as the [Foreign Military] considers a similar path."

For the reasons detailed below, the Defendants' arguments are rooted in a misrepresentation of the Government's allegations and the Indictment and ignores controlling legal precedent. The Defendants cannot meet their burden under Rule 7(d) of demonstrating that paragraph 45 of the Indictment is clearly irrelevant, prejudicial, and inflammatory because the allegations in paragraph 45 are intrinsic to the charged conspiracy and highly probative of the Defendants' criminal conduct. The Defendants' motion is meritless and should be denied.

  a. **Paragraph 45 Is Neither Inflammatory Nor Prejudicial, And Is Relevant to the Alleged Conduct**

"Motions to strike surplusage from an indictment are highly disfavored in this Circuit." *United States v. Watt*, 911 F. Supp. 538, 553 (D.D.C. 1995). "The scope of a district court's discretion to strike material from an indictment is narrow[.]" *United States v. Oakar*, 111 F.3d 146, 157 (D.C. Cir. 1997). A motion to strike surplusage "'should be granted *only* if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial.'" *United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir. 1998) (*quoting* 1 Charles Alan Wright, Federal Practice and Procedure § 127, at 426 (1982)) (emphasis added).

4

"The standard under Rule 7(d) has been strictly construed against striking surplusage." *United States v. Jordan*, 626 F.2d 928, 930 n.1 (D.C. Cir. 1980). "'[O]nly rarely has surplusage been ordered stricken.'" *Watt*, 911 F. Supp. at 554 (*quoting* Wright, supra, § 127, at 426). "[I]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." *United States v. Thomas*, 875 F.2d 559, 562 n.2 (6th Cir. 1989) (internal quotations and citation omitted).

The Defendants argue that because paragraph 45 alleges conduct that does not qualify as "official action" following *McDonnell v. United States*, 579 U.S. 550 (2016), that it should be stricken as surplusage. This argument misses the point. Whether the conduct alleged in paragraph 45 is an "official action" does not negate the fact that it is intrinsic to—or direct proof of—the charged crimes. As described above, in count one, the Indictment alleges that the Defendants' entered into a conspiracy, and the Defendants' corrupt agreement required Burke to use his official position to perform **two** tasks: 1) ensure the Navy entered into a contract with Company A; **and** 2) delay his retirement six months, so that he could continue to promote Company A. ECF No.1 at ¶¶ 22-25, 35. It is clear that the corrupt agreement alleged in the Indictment required Burke to promote Company A if he wanted to join Company A as an employee. *Id.* Paragraph 45 details the ways that Burke fulfilled that requirement. Paragraph 45a describes how Burke emailed "a Foreign Military Officer asking him/her to report back about the Foreign Military's efforts to contract with Company A because such information would advance Company A's efforts to market Company A to a wider U.S. Navy audience." Paragraph 45b further details Burke's efforts to fulfill his end of the corrupt agreement by sending an email "introducing KIM and MESSENGER to Person 4, a four-star Navy Admiral who oversaw training programs for Navy recruits' 'pipeline schools.'"

Paragraph 45b then goes on to describe how Burke took the opportunity and "promoted Company A's training program to Person 4." But, Burke's efforts did not stop there. Paragraph 45c alleges that Burke continued to work to promote Company A and "forwarded an email to Person 4 that contained a proposal for Company A to provide training to the Foreign Military[,]" and commented that the proposal had "'sort of the same components I would see us using.'" Paragraph 45d details Burke's continued participation in the charged conspiracy, alleging that Burke "emailed a Senior Foreign Military Official, stating, 'I wanted to write you a short note on [Company A] – something I know the [Foreign Military] is exploring[,]'" and that Burke promoted Company A's training, by informing the Senior Foreign Military Official that he "'put together a proposal for wider US Navy implementation,' and added, 'my team is standing by as your local US Navy team to help in any way as the [Foreign Military] considers a similar path.'"

Controlling legal precedent is clear that at trial, the Government is entitled to introduce evidence that is direct proof of a fact at issue. *See United States v. Alexander*, 331 F.3d 116, 125-126 (D.C. 2003) (finding that evidence is admissible as intrinsic evidence if the evidence is "is offered as direct evidence of a fact in issue, not as circumstantial evidence requiring an inference regarding the character of the accused[.]"). The overt acts Burke took to fulfill one of the agreed to conditions of the Defendants' corrupt agreement is evidence of a fact at issue. *United States v. Bowie*, 232 F.3d 923, 929 (D.C. 2000) (["I]f the evidence is of an act that is part of the charged offense, it is properly considered intrinsic.'"). While repeatedly asserting that Burke's steps to promote Company A do not constitute "official action," the Defendants ignore that these steps were not only manner and means of the charged conspiracy, ECF No. 1 at ¶ 24, but also overt acts taken in furtherance of the charged conspiracy, *id.* at ¶ 45.

The allegations in paragraph 45 are also central to Count Four, the conflict of interest charge, and Count Five, the concealment charge. As relevant here, to convict on Count Four, the Government must prove that Burke "knowingly and willfully participated personally and substantially as a United States Government officer and employee, through decision, approval, disapproval, recommendation, the rendering of advice, and otherwise in a particular matter, that is, the awarding of United States Government contracts to Company A[.] ECF No. 1 at ¶ 53. The fact that Burke was promoting Company A to other high ranking military officials is probative of the fact that Burke was using his position to recommend and provide advice to others with respect to Company A. In Count Five, the Government must prove that Burke "knowingly and willfully falsified, concealed, and covered up by a trick, scheme, and device a material fact in a matter within the jurisdiction of the executive branch of the United States Government; that is, [Burke] intended to and did conceal from the Navy the fact that he received an offer of employment at Company A prior to taking acts to promote Company A's business within the Navy." *Id.* at ¶ 55. Paragraph 45 specifically alleges that Burke promoted Company A "without disclosing his prior employment offer from KIM and MESSENGER" and then goes on to describe the times that Burke promoted Company A without revealing that Kim and Messenger had offered him a lucrative salary and stock options to join Company A. These allegations are probative of the Defendant's knowing and willful concealment of his employment offer—he had many opportunities while discussing and promoting Company A to disclose his prospective employment and financial interest, but never did so. The allegations are also probative of the Defendant's motive to conceal his employment because being able to promote Company A would help line his pockets later.

The Defendants cannot meet their heavy burden under Rule 7(d) because the language they challenge in the Indictment is relevant to at least three of the offenses charged. *See United States*

7

*v. Mathis*, 216 F.3d 18, 26 (D.C. Cir. 2000) (Finding the government is entitled to introduce evidence "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to explain to the jury how the illegal relationship between the participants in the crime developed." (internal quotations and citation omitted)). Such intrinsic allegations are not surplusage. *See Bowie*, 232 F.3d at 929.

Additionally, the Defendants' conclusory statements that the allegations are "highly prejudicial" and "inflammatory" do not withstand scrutiny. The Defendants cannot meet their burden of proving that the probative value of the evidence that Burke took steps to promote Company A, "is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. There is also nothing prejudicial about the allegations in paragraph 45 and the supporting evidence. The allegations in paragraph 45 do not, for example, inject something new and prejudicial into the case, such as violence or perversion, which might inflame the jury. The evidence is discrete, consisting of only a number of emails. Furthermore, the probative value of the evidence is high: it goes directly to facts at issue, including that Burke took steps to promote Company A to fulfill the requirement of the Defendants' corrupt agreement and concealed his financial interest in Company A. Indeed, the Defendants' lackluster arguments on this point only further emphasizes that the allegations in paragraph 45 are not prejudicial.

The Defendants cannot meet their burden pursuant to Rule 7(d)—the allegations in paragraph 45 are intrinsic to the charged conduct. The allegations are not only relevant, but also highly probative, and are neither inflammatory nor prejudicial. The Defendant's motion to strike paragraph 45 as surplusage should be denied.

### b. Evidence and Argument Relating to the Steps Burke Took to Promote Company A is Probative and Does Not Present Any Danger of Unfair Prejudice

The Defendants also argue that the Government should be precluded from presenting any evidence relating to the allegations in paragraph 45, as the allegations do not constitute "official action," and, as such, evidence relating to paragraph 45 would be irrelevant pursuant to Federal Rule of Evidence 401 (Rule 401) and prejudicial pursuant to Federal Rule of Evidence 403 (Rule 403). Once again, the Defendants conclusory and unsupported arguments do not withstand scrutiny. Controlling legal precedent and an accurate reading of the Indictment demonstrate why the Defendant's motion must fail.

First, as described above, whether the allegations in paragraph 45 constitute "official action" is irrelevant. The conduct alleged in paragraph 45 and the evidence proving such allegations are probative of elements of Count One, the conspiracy charge, Count Four, the conflict of interest charge, and Count Five the concealment scheme charge.[2]

Second, evidence that Burke took steps to promote Company A is relevant pursuant to Federal Rule of Evidence 401 (Rule 401). "Rule 401 defines relevant evidence as having 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Old Chief v. United States*, 519 U.S. 172, 178 (1997) (*quoting* Fed. R. Evid. 401).

As discussed above, evidence that Burke emailed other high-ranking Navy and foreign military officials, is admissible intrinsic evidence as it is charged conduct relating to the Defendants' corrupt agreement, and highly probative of Burke's concealment of his prospective

---

[2] Even if this Court were to find that the allegations in paragraph 45 are not intrinsic, the evidence proving those allegations is still admissible pursuant to Federal Rule of Evidence 404(b), as evidence of the Defendants' "'opportunity, intent, plan, knowledge, identity, absence of mistake, or lack of accident.'" *See United States v. Abou-Khatwa,* 40 F.4th 666, 678-79 (D.C. Cir. 2022) (*quoting* Fed. R. Evid. 404(b)) (finding that even if intrinsic evidence was extrinsic, it would have been properly admitted for additional permissible purposes).

employment and financial interest in Company A. The Defendants' assertion that such conduct is "utterly tangential," ECF No. 60-1 at 9, and "extraneous," ECF No. 71 at 7, defies all logic. The evidence is directly relevant because it shows the manner and means Burke used to carry out his corrupt agreement with Kim and Messenger, as well as overt acts taken in furtherance of that corrupt agreement. It is also evidence that Burke was using his position to recommend and provide advice to others, as is relevant and highly probative to the conflicts of interest charge (Count Four). It shows the actual conflict; his own future financial gain provides a motivation to promote the company.  And, it is relevant to the concealment scheme charge (Count Five), as it is illustrative of his lack of mistake. In short, the evidence is admissible pursuant to Rule 401 because it is evidence that makes facts of consequence more likely.

Second, such evidence is not unfairly prejudicial. Rule 403 precludes the admission of otherwise relevant and admissible evidence only if "its probative value is *substantially* outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403 (emphasis added). That rule "tilts, as do the rules [of evidence] as a whole, toward the admission of evidence in close cases." *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984). The Supreme Court has described "unfair" prejudice as "speak[ing] to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180. The Court of Appeals has explained that FRE 403's prohibition of unfairly prejudicial evidence in this way:

> Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone. It does not bar powerful, or even "prejudicial" evidence. Instead, the Rule focuses on the "danger of unfair prejudice," and gives the court discretion to exclude evidence only if that danger "substantially outweigh[s]" the evidence's probative value. [citations omitted, alterations in original].

10

*Gartmon*, 146 F.3d 1015, 1021 (D.C. 1998) (affirming admission, pursuant to Rule 404(b), of evidence that the defendant, charged with fraud, used gun and threatened cooperator); *see also United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("Rule 403 'does not bar powerful, or even "prejudicial" evidence. Instead, the Rule focuses on the "danger of unfair prejudice," and gives the court discretion to exclude evidence only if that danger "substantially outweigh[s]" the evidence's probative value.'"). "[I]n determining whether the probative value is substantially outweighed by the danger of unfair prejudice it is a sound rule that the balance should be struck in favor of admission when the evidence indicates a close relationship to the event charged." *United States v. Clarke*, 24 F.3d 257, 266 (D.C. Cir. 1994) (quotations and citations omitted).

Evidence that Burke promoted Company A presents no danger of unfair prejudice. Any possible prejudicial effect is simply because it is inculpatory, and plainly not "substantially outweigh[d]" by its significant probative value. The balancing between probative and unfairly prejudicial leans toward inclusion. *See e.g., United States v. Naranjo*, 710 F.2d 1465, 1469 (10th Cir. 1983) ("Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing."); *United States v. Morris*, 79 F.3d 409, 412 (5th Cir. 1996) ("Because Rule 403 requires the exclusion of relevant evidence, it is an extraordinary measure that should be used sparingly."); *United States v. Bradley*, 145 F.3d 889, 893 (7th Cir. 1998) (Rule 403 is not a tool designed "to permit the Court to 'even out' the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none."). The evidence proving the allegations in paragraph 45 does not inject upsetting evidence, evoke strong emotions, or run the risk of shocking the jury in any way. The evidence simply demonstrates, as is necessary, the manner and means of the charged conspiracy and that Burke took overt acts to carry out the Defendants' corrupt agreement. The discrete set of emails from Burke, promoting Company A, further corroborates, as is necessary, that Burke was using his

position to recommend and provide advice to others with respect to Company A, all the while concealing his prospective employment and financial interest in Company A. As such, evidence relating to paragraph 45 is relevant and not unfairly prejudicial. The Defendants' motion should be denied.

## IV.     Conclusion

For the foregoing reasons, the Defendants' Motion to Strike Surplusage and Exclude Irrelevant Evidence should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052


By:     */s/ Rebecca G. Ross*

Rebecca G. Ross
Assistant United States Attorneys
601 D Street N.W.
Washington, DC 20530

Trevor Wilmot
Kathryn E. Fifield
Trial Attorneys
1301 New York Ave. NW
Washington, D.C. 20530

## CERTIFICATE OF SERVICE

Rebecca G. Ross, attorney for the United States, hereby certifies that a true and correct copy of this opposition has been electronically served on attorney for the defendant.

/s/ Rebecca G. Ross
Rebecca G. Ross