UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | CRIMINAL NO. 24–265 (TNM) |
| ROBERT P. BURKE, : | |
| : | |
| YONGCHUL "CHARLIE" KIM, and : | |
| : | |
| MEGHAN MESSENGER, : | |
| : | |
| Defendants. : | |

## UNITED STATES' OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL

The Government has produced and continues to produce discoverable material to all three Defendants in this case consistent with its discovery obligations. The Government regularly reviews material in its possession, custody, and control to ensure compliance with its discovery obligations. In their "Motion to Compel" (ECF No. 114), Defendants Yongchul "Charlie" Kim and Meghan Messenger erroneously assert that the Government has made "discovery failures" but stop short of accusing the Government of any discovery violation. They know they have no basis to do so. The law imposes a burden on the Defendants to identify material that they believe exists and has been withheld, demonstrate that the material is discoverable, and satisfy other requirements (demonstrating materiality, for example) depending on the applicable discovery framework (*Brady*, Rule 16, etcetera). The Defendants have not done any of this, so the instant motion does not state any basis for relief. The Government continues to scrupulously mind its discovery obligations consistent with the law and any order of this Court. *See, e.g.*, Court's July 1, 2024, Minute Order advising Government of its discovery obligations consistent with Fed. R. Crm. P. 5(f). This Court should deny the Defendants' motion.

## DISCUSSION

The Defendants ask this Court for an "an order directing the government to re-review all material in its possession, custody, or control, and to produce any discoverable information that has not previously been disclosed" to include a "direction that the government affirmatively seek out and produce material that may be known to others acting on the government's behalf, including the DOD and other branches of government closely aligned with the prosecution." ECF No. 114-1 at 10 (internal quotation marks and citation omitted).[1] The Defendants do not state that they are aware of any discoverable evidence that has not already been produced. Aside from records that they have already requested and received, they have not come to the Government to request additional records or information of which they are aware. They did not confer with the Government before filing the instant motion. As the Defendants did in their earlier Joint Motion to Suppress, *see* ECF No. 61, the Defendants here gesture at discovery violations, without actually making such an accusation, in an apparent attempt to damage the Government's credibility before the Court and consume both Government and Court resources in the runup to trial. They are careful to say that they are not accusing the Government of any discovery violation, ECF No. 114-1 at 2, because it is clear they have no basis to do so. Instead, the Defendants suggest that the pace of the Government's production of certain records in the months following indictment (many months before trial) and the Government's decision not to seek certain records that the Government had no legal obligation to obtain is tantamount to "lackadaisical" "discovery failures." *See* ECF No. 114-1 at 13. But characterizing the Government's production of discovery as a "failure" does not make it so, and there is nothing to back that characterization up. This Court should deny their baseless request.

---

[1] Pin citations to the Defendants' Memorandum in Support of their Motion correspond to the pagination in the document itself, not pagination generated by ECF.

**I.    The Government has Complied with its Discovery Obligations.**

The Government has produced discovery, providing the Defendants with information well beyond that to which they are entitled.  Without identifying or requesting any particular information, or pointing to any specific principle of discovery law to support any supposed "failure" on the Government's part, the Defendants discuss in their motion four categories of evidence, which they claim support their request.   Having complied with its discovery obligations as to these four categories, and all other discoverable material known to the Government, the Defendants' purported concerns provide no basis for relief.

   *A. Legal Standards Governing Defendants' Motion*

In criminal cases, the Government's essential discovery duties flow from the progeny of *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), Rule 16 of the Federal Rules of Criminal Procedure, and the Jencks Act (18 U.S.C. § 3500).

   i. *Brady/Giglio*

*Brady* imposes an "affirmative duty" upon the government "to produce exculpatory evidence when such evidence is material to either guilt or punishment."  *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005).  *Brady* also imposes "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."  *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).  As discussed further below, that includes "a duty to search files maintained by branches of government closely aligned with the prosecution," if "there is enough of a prospect of exculpatory materials to warrant a search."  *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992) (internal quotation marks and citations omitted) (cleaned up).  But the scope of that duty depends on the "working relationship" between the prosecution and other agencies, along with "the nature of the files" at issue, and the difficulty of searching for them.  *Brooks*, 966 F.2d at 1503; *see also United States v. Griffith*, 990 F.2d 1377 (tbl.), at *5 (D.C. Cir.

1993) (finding no *Brady* obligation where there was "no sound basis for believing that the records contained potentially exculpatory material" and "the documents were not within the control of the [prosecutors] or another government office that would allow the prosecutors easy access").

*Brady* material includes material affecting the credibility of key government witnesses. *See Giglio*, 405 U.S. at 154. In *Giglio*, the Supreme Court held that "when the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility" is "incompatible with rudimentary demands of justice." *Id.* at 153-54 (internal quotation marks omitted).

It is the defendant's burden to show that a *Brady* violation has occurred. *United States v. Andrews*, 532 F.3d 900, 907 n.3 (D.C. Cir. 2008). That is, the defendant must show that the government actually withheld evidence that is "material and favorable to his defense, in ways not merely cumulative." *United States v. Zink*, No. CR 21-191 (JEB), 2023 WL 5672555, at *3 (D.D.C. Sept. 1, 2023) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 873 (1982)). A defendant's mere speculation—either that another agency is closely aligned with the prosecution or that a search of its files would yield favorable evidence—cannot support a claim that the government has failed to fulfill its *Brady* obligations. *Brooks*, 966 F.2d at 1504. "As the burden of the proposed examination rises, clearly the likelihood of a pay-off must also rise before the government can be put to the effort." *Id.* Unless and until a defendant becomes aware that the government has withheld specific exculpatory evidence, and alerts the court as to its existence, the government's "decision on disclosure is final." *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987).

        ii. <u>Rule 16</u>

"Upon a defendant's request" the Government is required under Rule 16 to search for or produce evidence that is "within the government's possession, custody, or control" and is "material to preparing the defense." *See generally* Fed. R. Crim. P. 16. In assessing the scope of the

4

government's "possession, custody, or control," courts are "more concerned with fairness to the defendant, on the one hand, and the government's ease of access to the documents sought, on the other, than with the issue whether the documents are actually within the physical possession of the prosecutor." *United States v. Libby*, 429 F. Supp. 2d 1, 5-6 (D.D.C. 2006) (internal quotation marks omitted). The government must search for and produce information "maintained by other components of the government which are 'closely aligned with the prosecution.'" *Id*. at 6 (quoting *Brooks*, 966 F.2d at 1503); *see also id*. (citing *United States v. Poindexter*, 727 F. Supp. 1470, 1477 (D.D.C. 1989); *Safavian*, 233 F.R.D. at 14). The United States government is not by law, as the Defendants suggest, *see* ECF No. 114-1 at 8, a monolith, and "the prosecution," for Rule 16 purposes, does not reach into its far corners. *See United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998); *United States v. Michel*, No. 19-cr-148-1, 2023 WL 7140001, at *2 (D.D.C. Mar. 22, 2023) (internal quotation marks omitted). Rather, the inquiry as to the scope of the prosecution team "is fact-intensive and must be resolved on a case-by-case basis." *Libby*, 429 F. Supp. 2d at 9.

Under Rule 16, a defendant's requested information must be "material." The defendant bears the burden of demonstrating materiality. While it "is not a heavy burden," the defendant must point to at least "a strong indication that the requested information will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotation marks omitted). In other words, "the Government need disclose Rule 16 material only if it enables the defendant significantly to alter the quantum of proof in his favor." *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996) (internal quotation marks omitted); *see also Lloyd*, 992 F.2d at 351. To compel Rule 16 discovery, a defendant must show at least "a

tenable relationship between the materials sought and the preparation of the defense" to those allegations. *Poindexter*, 727 F. Supp. at 1480.

### iii. Jencks Act

"[O]n motion of the defendant" the government must "produce any statement" in the government's possession "which relates to the subject matter" of a witness's testimony. 18 U.S.C. § 3500(b).

### iv. The Prosecution Team

As noted above, membership on the prosecution team, and thus *Brady* and Rule 16 obligations, apply only to entities "closely aligned with the prosecution," *Brooks*, 966 F.2d at 1503 (internal quotation marks omitted), *Libby*, 429 F. Supp. 2d at 6, and who "submit to the direction of the prosecutor and participate in the investigation," *United States v. Barcelo*, 628 Fed. App'x 36, 38 (2d Cir. 2015). *See also, e.g.*, *United States v. Pelullo*, 399 F.3d 197, 216-19 (3d Cir. 2005) (civil subcomponent of U.S. Department of Labor (DOL) not part of "prosecution team" even though "other agents in the DOL participated in this investigation"); *United States v. Morris*, 80 F.3d 1151, 1169-70 (7th Cir. 1996) (IRS and other federal agencies excluded because not "part of the team that investigated this case or participated in its prosecution"). Courts have repeatedly declined to define the prosecution team so broadly so as to adopt "a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." *Avellino*, 136 F.3d at 255 (internal quotation marks omitted).

Where that direct prosecutorial control is lacking, so is the *Brady* obligation. Accordingly, persons and entities—including parts of federal agencies not controlled by the prosecutors—have repeatedly been found to be outside the "prosecution team." That is, if the "bureaucratic boundary" between the prosecution and another government agency is clear and distinct, it cannot be said that records in the possession of that agency are within the control of the prosecution team.

*Cf. Brooks*, 966 F.2d at 1503. Time and again, courts have soundly rejected *Brady* arguments claiming a failure to obtain or preserve records from those outside the prosecution team, including a variety of entities and persons friendly to the prosecution but not controlled by it, such as other government agencies. *See, e.g.*, *Pelullo*, 399 F.3d at 218 (holding that a separate agency unit within the same parent agency as the investigators was not a member of the prosecution team as there was not "any indication that the prosecution had any sort of control over" the separate unit); *United States v. Webb*, 651 F. App'x 740, 744 (10th Cir. 2016) ("[T]he U.S. Attorney's Office is not required to disclose information it is unaware of and that is in the possession of a separate federal agency not involved in the prosecution or investigation of the present case"); *United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir.1989) (federal prosecution team in one district did not possess information known by AUSAs in different districts regarding a government witness); *United States v. Chalmers*, 410 F. Supp. 2d 278, 290 (S.D.N.Y. 2006) (federal entities do not become part of the prosecution team merely because they "made documents available to the prosecution"); *United States v. Indivior Inc.*, No. 1:19CR00016, 2019 WL 7116364, at *5 (W.D. Va. Dec. 23, 2019) ("[T]he prosecution is not required to produce information possessed by a separate subdivision of a participating agency when it had no part in the criminal investigation or when the prosecution had no control over the agency officials who physically possessed the documents."); *United States v. Connolly*, No. 1:16-CR-00370 (CM), 2017 WL 945934, at *4 (S.D.N.Y. Mar. 2, 2017) ("The mere fact that the Government may have requested and received documents from another agency in the course of its investigation does not convert the investigation into a joint one." (Internal quotation marks omitted)).

### B. The Discovery Requested and Produced to the Defendants

#### i. Discovery relating to Person 3

Three of the categories the Defendants identify to support their request relate to an

individual identified in the indictment as Person 3, who is a prospective Government witness. The record as to this discovery is quite clear: the Government took its obligation seriously and produced what was required.

Person 3 is a federal employee and veteran who maintains an active security clearance. Person 3's personal knowledge of certain facts related to this case is tangentially connected to but almost entirely divorced from her status as a federal employee. Prior to indictment, Person 3 self-reported to an agent that she had been the subject of an adverse credibility finding made by a judge in the course of Person 3's family court proceedings. Prior to this disclosure, the Government was not aware of and had no reason to know about the adverse credibility finding. The Government soon thereafter located a publicly available copy of the appellate decision affirming the judge's orders, including the judge's adverse credibility finding of Person 3.[2] Prior to indictment, the Government endeavored to and did obtain the original decision by the judge, although those records were under seal in state court and certainly not in the prosecution team's possession at the time. After the Government became aware of the adverse credibility finding, the Government proactively pulled additional records in the possession of NCIS related to a criminal investigation into allegations made by Person 3, similar to allegations made in the civil family court proceedings.

In or about November 2024, the Government became aware of sustained allegations of professional misconduct against Person 3 when the Government pulled records related to Person 3's security clearance background investigations at the request of defense counsel (regardless of

---

[2] The Government disclosed the information regarding Person 3's adverse credibility finding to the grand jury ahead of indictment and provided counsel for the Defendants with grand jury transcripts shortly after indictment. Second, as noted in the Defendants' motion, the Government directed counsel for the Defendants to the publicly available state court appellate decision.

whether it was or could have been required to reach beyond the prosecution team). Prior to pulling those records the Government did not have reason to believe that they contained discoverable material.[3] Subsequently, the Government (again, regardless of whether it would or could have been required to reach beyond the prosecution team) pulled underlying records of the investigation into the professional misconduct allegations and obtained a report prepared by U.S. Navy Office of Inspector General (Navy OIG) investigators who found, among other things, that many representations that Person 3 made to investigators regarding the allegations were inconsistent with other evidence gathered in the course of the investigation and/or were not credible. All of these records were produced to counsel for all three Defendants after they came into the possession of prosecution team after being produced by each separate agency.

The Government has reviewed and continues to review, for discovery purposes, material in the prosecution team's possession regarding Person 3. As to any records or information regarding Person 3 that may be in the possession of any other U.S. Government agency or subcomponent, the Government is not aware of the existence of any additional discoverable material and there are no outstanding requests for such material from any defendant.

ii. <u>The BCC Data is Not in the Government's Possession or Control</u>

The fourth category of information the Defendants use to justify their motion relates to blind carbon copy (BCC) data that, due to an error on the part of the provider (Microsoft), was not provided to the Government in response to a search warrant for the Defendants' emails. In other words, the BCC data is not in the Government's possession, and is equally available to the Defendants as the Government via trial subpoena (or by the Defendants simply searching their

---

[3]     Indeed, a review of those security clearance records after they came into the possession of the prosecution team indicated that those records arguably contained no discoverable material but the government produced them anyway out of an abundance of caution and because Defendant Kim specifically requested them.

own email accounts).

On May 17, 2024, Microsoft alerted Government attorneys as to the error in their productions and advised that the remedy would involve additional legal process, which the Government did not ultimately pursue because it did not believe it had any obligation to do so. Moreover, the only reason that the Government is aware that the BCC data may contain material favorable to the defense is because counsel for the Defendants sent Government counsel copies of emails showing BCC data that they obtained from their clients. In other words, the Defendants are already in possession of the purportedly exculpatory information that they seek. The Government is not. The Government is not obligated to obtain potentially voluminous records on the Defendants' behalf when they already possess it. *See Morris*, 80 F.3d at 1170 ("Where, as here, alleged *Brady* material was available to defendants through the exercise of reasonable diligence, they cannot … insist[] that the government should have conducted their investigation for them."); *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990) (holding that when "exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the Brady doctrine"); *Webb*, 651 F. App'x at 744.

> C. *The Defendants Have Not Supported Their Accusation of "Discovery Failures" on the Government's Part, Therefore They Are Entitled to No Relief.*

In sum, the Defendants' complaints in the instant motion are not actionable and the Defendants have not shown otherwise. The Government has produced discoverable material in its possession in due course and the Defendants have not shown otherwise. Again, the Defendants did not consult or confer with the Government prior to filing this motion.

The Government and Defendants *have* conferred in the past regarding specific requests and, from the Government's perspective, those requests have been addressed. In some cases, the

Government was already in possession of and preparing to produce requested material (such as records and information regarding Person 3's family court proceedings). In some cases, the Government obtained material (which the Government did not believe it was obligated to seek) at the request of Defendants and produced it once it came into the possession of the prosecution team (such as Person 3's security clearance background check records). In some cases, the Government declined to obtain material not in its possession because it did not believe it was obligated to do so (such as the Microsoft BCC data). No requests from the Defendants are outstanding. The Government has and will continue to proactively oversee and quality check its discovery processes and productions. There is nothing left for which the Defendants have a valid basis to ask of this Court.

> II. **The Defense Request that the Court Order the Government to Search the Records of DoD is not supported by law.**

The law imposes no duty upon the Government to scour federal agency records, as Defendants request, when neither the Government nor the Defendants have any reason to believe such a search would produce discoverable material. *See Griffith*, 990 F.2d 1377 (tbl.), at *5. The Defendants' mere speculation does not entitle them to any relief. *See Brooks*, 966 F.2d at 1504. The Government is unaware of any additional discoverable information in its possession, custody, or control,[4] and the Defendants have identified none.

Here, the Government has produced records in the possession of FBI, NCIS, DCIS, and DoD OIG. These are the only agencies whose personnel could possibly be considered "closely aligned" with the prosecution team, *Brooks*, 966 F.2d at 1503, not, as Defendants argue, all of the

---

[4] The Government has expeditiously produced additional materials that have come into its possession, custody, and control in the time since Indictment. Additional productions of such material are forthcoming.

11

Department of Defense. Simply because a particular U.S. Government subcomponent shares a parent agency or department with members of the prosecution team, does not make that subcomponent's personnel files and records, as a matter of law, within the prosecution team's control. Whether certain Government records are within the control of the prosecution team is, instead, a fact-specific analysis. *See Libby*, 429 F. Supp. 2d at 9. Again, the prosecution team is those who "submit to the direction of the prosecutor and participate in the investigation." *Barcelo*, 628 Fed. App'x at 38.

The Department of Defense—of which the Navy is just one subpart—is large and extraordinarily complex. The Navy, in turn, has numerous components and subcomponents, each with distinct chains of command, which collectively employ upwards of 300,000 personnel, both civilian and active-duty military. The Defendants' suggestion in their motion that any record associated with any federal or DoD witness is in the possession, custody, and control of the prosecution team is therefore wrong as a matter of fact and law. By way of illustration, the Defendants' motion describes Person 3's "personnel file" as a contested set of records that the Defendants sought and the Government ultimately produced. *See* ECF No 114-1 at 1-2. But the Government did not obtain, and Defendants do not have, Person 3's "personnel file." As the Government could have explained had the Defendants conferred on their motion, one's "personnel file" is not a single cache of records stored in a single location, or under the control of a single entity. The Government has obtained and produced specific records, from specific and distinct agencies, related to Person 3's federal employment based on its expansive view of its discovery obligations and certain requests by the Defendants.

At all times, the Government has sought records that it had reason to believe contained material information and produced such records once they came within the control of the

12

prosecution team. The Government obtained records associated with Person 3's security clearance background check from the agency that possessed them—the Defense Counterintelligence and Security Agency (DCSA)—a process which took several weeks and coordination with multiple different points of contact (POCs). Based on the records produced by DCSA, the Government became aware that Person 3 had been subject to discipline for professional misconduct though, on its face, it was not clear that records associated with Person 3's professional misconduct would contain discoverable material. Nevertheless, the Government proactively sought records from the agency which possessed them—the U.S. Office of Naval Inspector General (Navy OIG)—a process which, again, took several weeks and coordination with multiple POCs.[5] To the best of the Government's knowledge, there is no overlap either in personnel or chain of command between DCSA or Navy OIG and NCIS, DCIS, or the Department of Defense Office of the Inspector General, nor is DCSA a subcomponent of the Department of the Navy. These entities are each distinct subcomponents of the Department of Defense.

In short, the Defendants' assertion that the Government should be required to scrape Government databases for indeterminate information is unsupported by the law and should not be entertained. Imposing such a burden on the Government in the fashion that the Defendants argue would grind federal law enforcement involving any federal employee (as a witness or defendant) to a halt. *Avellino*, 136 F.3d at 255; *cf. Brooks*, 966 F.2d at 1504 ("As the burden [to the government] of the proposed examination rises, clearly the likelihood of a pay-off must also rise before the government can be put to the effort.").[6] That the Defendants have not accused the

---

[5] The practical difficulty of obtaining these records, itself, illustrates the point that these records were not in the possession, custody, or control of the prosecution team. *See Brooks*, 966 F.2d at 1503; *Libby*, 429 F. Supp. 2d at 5-6; *Griffith*, 990 F.2d 1377 (tbl.), at *5.

[6] The cited discussion from *Brooks* presumes, under the framework of *Brady*, that the

Government of any actual discovery violation and that the Government has produced everything in its possession that the Defendants have asked for speaks volumes about the nature of the Defendants' empty request.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny the Defendants' Motion to Compel.

Respectfully submitted,

Antoinette T. Bacon
Supervisory Official for the Criminal Division
U.S. Department of Justice

:                              By:            /s/
                                    Kathryn E. Fifield
                                    Trevor Wilmot
                                    Trial Attorneys
                                    Public Integrity Section
                                    1301 New York Ave. NW
                                    Washington, D.C. 20530
                                    Office: (202) 514-1412

                                    EDWARD R. MARTIN, JR.
                                    UNITED STATES ATTORNEY
                                    D.C. Bar No. 481866

                                    Rebecca G. Ross
                                    Assistant United States Attorney
                                    601 D Street N.W.
                                    Washington, DC 20530
                                    Office: (202) 252-4490

---

defendant has actually shown "enough of a prospect of exculpatory materials to warrant a search." 966 F.2d at 1503. Again, here, the Defendants have identified exactly zero discoverable records or information that they have not already received. That is to say, the Defendants have not satisfied their burden to show that the government has withheld evidence, much less discoverable evidence. *Andrews*, 532 F.3d at 907 n.3.