UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**ROBERT P. BURKE,**<br>**YONGCHUL "CHARLIE" KIM, and**<br>**MEGHAN MESSENGER,**<br><br>**Defendants.** | Case No. 1:24-cr-00265-TNM |

### YONGCHUL "CHARLIE" KIM AND MEGHAN MESSENGER'S REPLY IN FURTHER SUPPORT OF THEIR JOINT OBJECTION TO GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 51

Defendants Yongchul "Charlie" Kim and Meghan Messenger respectfully submit this reply in further support of their objection to the proposed jury instruction on bribery under 18 U.S.C. § 201(b).[1]

The government seeks to disturb a foundational principle of American criminal law: "wrongdoing must be conscious to be criminal." *Morissette v. United States*, 342 U.S. 246, 252 (1952). Bribery is no exception. The term "corruptly" in Section 201(b) serves the critical purpose of distinguishing between lawful exchanges and criminal bribery because the mere existence of a *quid pro quo* does not render conduct "corrupt" without additional proof of wrongful intent. *See* ECF No. 115 (the "Objection" or "Obj.") at 3–4.

---

[1] Although the Court ordered the government to file a "reply," the government's brief was its response to Defendants Kim and Messenger's objections and was filed in the 14-day period allowed for oppositions under Local Criminal Rule 47(b), not the 7-day period allowed for replies under Local Criminal Rule 47(d). Defendants Kim and Messenger are entitled to reply because they have not had the chance to respond to the government's arguments, which raise novel and serious questions of law implicating Defendants' rights.

1

The government protests, arguing that the statute includes only one mental state requirement, that the defendant "intend to engage in a *quid pro quo*." ECF No. 129 (the "Opposition" or "Opp.") at 3–6. As an initial matter, this position is wholly inconsistent with what the government itself argued one year ago in *Snyder*. In its brief before the Supreme Court, the government explained that the inclusion of "an express mens rea of 'corruptly'" imposes "a major limiting feature" on federal-programs bribery that reflects Congress's intent to criminalize bribery only when it constitutes "'wrongful, immoral, depraved, or evil' conduct." Brief for the United States at 38–39, *Snyder v. United States*, 603 U.S. 1 (No. 23-108), 2024 WL 1116453, (quoting *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005) (citing dictionaries)); *see also United States v. Sittenfeld*, 128 F.4th 752, 794 (6th Cir. 2025). In the government's own words, "'corruptly' unquestionably narrows the statute's scope … through a stringent mens rea requirement, not an artificially limited actus reus." United States Br. at 25–26.

While *Snyder* concerned Section 666, there is no reason to read either the government's briefing or the Supreme Court's holding as limited to that statute, especially in light of the Supreme Court's determination that "Section 666 shares [a] defining characteristic[] of § 201(b)'s bribery provision: the corrupt state of mind." *Snyder*, 603 U.S. at 12. The government—ignoring its earlier position—now seeks to dismiss the Supreme Court's statements in *Snyder* that "bribery requires that the official have a corrupt state of mind," 603 U.S. at 11, as "dicta," Opp. 5. But the Supreme Court's interpretation of Section 201(b) was integral to its analysis of Section 666, which it explained was "modeled" on § 201(b). 603 U.S. at 10–11. Moreover, the Court was explicitly referencing Section 201(b) when it stated that prosecutors must prove "the corrupt state of mind *and* the intent to be influenced in the official act." *Snyder*, 603 U.S. at 11 (emphasis added). The government argues that *Snyder* only addressed Section 201(b)(2) rather than Section 201(b)(1),

2

but the Court did not so limit itself and, in any event, that is a distinction without a difference. Whether referring to the bribe giver or the bribe taker, the term "corruptly" appears in both subsections without distinction, and the government itself acknowledges that "the definition of 'corruptly' is the same for both prongs." Opp. 1–2 n.1.

The government's position here is not only contrary to the Supreme Court's holding in *Snyder*—as well as the government's own briefing in *Snyder*—but it is also unpersuasive on the merits.  If "corruptly" only means "*quid pro quo*," then there would have been no need for Congress to have used the word "corruptly" in the statute.  But Congress *did* use the term "corruptly," and the government cannot simply ignore the statutory language.  Section 201(b)(1) prohibits "directly or indirectly, *corruptly* giv[ing], offer[ing] or promis[ing] anything of value to any public official … *with intent … to influence any official act*." 18 U.S.C. § 201(b)(1) (emphases added).  The statute therefore requires the government to prove *both* that a defendant had a "corrupt" state of mind *and* an intent to engage in a *quid pro quo*.  It is a "rather unremarkable proposition that the word 'corruptly' in [the statute] means *something*." *United States v. North*, 910 F.2d 843, 940 (D.C. Cir. 1990) (Silberman, J., concurring); *see also Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 633 (1973) (It is a "well-settled rule of statutory construction that all parts of a statute, if at all possible, are to be given effect."). Furthermore, the rule of lenity prevents courts from giving the words of a criminal statute "a meaning that is different from [their] ordinary, accepted meaning, and that disfavors the defendant." *Burrage v. United States*, 571 U.S. 204, 216 (2014).  When a criminal statute has multiple possible readings, courts do not "choose the harsher alternative" unless Congress has "spoken in language that is clear and definite." *United States v. Bass*, 404 U.S. 336, 347–49 (1971) (quotations and citation

3

omitted). Congress has not done so here. To the contrary, it wrote a statute with two separate mens rea requirements that each carry independent meaning.

It is therefore no surprise that none of the cases cited by the government actually holds that the word "corruptly" is wholly redundant with the *quid pro quo* requirement. *See* Opp. 3–4. Rather, the cited cases generally establish that an intent to engage in a *quid pro quo* is necessary for bribery, but not for illegal gratuities—a point Defendants do not dispute. *United States v. Paitsel*, No. CR 19-156-2 (CKK), 2023 WL 2139366 (D.D.C. Feb. 21, 2023), also provides scant support for the government's position. There, the "[d]efendant argue[d] only that there was insufficient evidence to establish that he acted 'corruptly,'" and the court found sufficient evidence that the defendant understood he was violating a duty. *Id.* at *4. While the court noted that "corruptly" does not require "acting with 'a bad or evil purpose,'" it said nothing about consciousness of wrongdoing and its recitation of the evidence that supported a finding of corrupt intent showed that the defendant was aware his actions were wrong because he lied to obscure them. *Id.* (citation omitted).

The government's assertion that "corruptly" for purposes of Section 201(b) does not mean acting with "consciousness of wrongdoing," because "the charged conduct is inherently corrupt," Opp. 2, is similarly flawed and is inconsistent with pattern jury instructions in several other circuits. *See, e.g.*, *see* 5th Cir. Pattern Jury Instruction 2.09A (2024) ("An act is 'corruptly' done if it is done intentionally with an unlawful purpose."); 10th Cir. Pattern Jury Instruction 2.11 (Feb. 7, 2025) (setting forth separate elements for (i) "corruptly [offering] anything of value" and (ii) acting "intentionally and with the intent unlawful purpose to influence an official act"); 11th Cir. Pattern Jury Instruction O5.1 (Apr. 15, 2024) ("To act 'corruptly' means to act knowingly and dishonestly for a wrongful purpose.").

The government cites one line from *Snyder*, that "American law generally treats bribes as inherently corrupt and unlawful," Opp. 2 (citing 603 U.S. at 5), but that statement describes how completed bribery is characterized in American law, not what elements must be proven to establish bribery in the first place. Moreover, the Supreme Court has emphasized that not all exchanges of value involving public officials are inherently corrupt. "The basic compact underlying representative government *assumes* that public officials will hear from their constituents and act appropriately on their concerns," *McDonnell v. United States*, 136 S. Ct. 2355, 2372 (2016), not that individuals engaging in good faith with public officials will be prosecuted and convicted regardless of any consciousness of wrongdoing. Under the government's logic, even someone "merely buying back fair treatment from an official who threatens to inflict unfair treatment," would be properly subject to prosecution. *United States v. Robertson*, 103 F.4th 1, 35–36 (D.C. Cir. 2023) (Henderson, J., dissenting) (citing James Lindgren, *The Elusive Distinction Between Bribery and Extortion: From the Common Law to the Hobbs Act*, 35 UCLA L. Rev. 815, 823 (1988)). Criminal law has never sanctioned such an unjust result. Bribery laws target corrupt exchanges, not good-faith conduct by those who lack awareness of wrongdoing.

The government's reliance on *Robertson*, 103 F.4th 1, is misplaced. Although the D.C. Circuit observed in *dicta* that "in bribery and tax cases, the expectation of a benefit is inherent in the crime in a way that it is not in the obstruction context," *id*. at 24, it did not hold that "corruptly" requires no showing of consciousness of wrongdoing in bribery cases. To the contrary, as Judges Henderson and Walker have recognized, "[c]ommon-law bribery statutes provided that 'the mere payment of a fee to an official for a benefit was not enough—the bribe payer had to know he was seeking an unlawful benefit.'" *Robertson*, 103 F.4th at 35–36 (Henderson, J, dissenting) (quoting

5

*United States v. Fischer*, 64 F.4th 329, 353 (D.C. Cir. 2023) (Walker, J., concurring in part), *rev'd on other grounds*).

The government's effort to remove consciousness of wrongdoing from Section 201(b) finds no support in the statute's text, Supreme Court precedent, or common law principles. The requirement that a defendant act "corruptly" serves a vital purpose: ensuring that only those who knowingly engage in wrongful conduct face criminal liability for bribery. The government's apparent concern that the jury will be persuaded that Defendants Kim and Messenger acted in good faith is grounds for dismissal, not the basis for atextual jury instructions that call out for reversal on appeal. This Court should reject the government's brazen attempt to depart from settled principles of criminal justice by criminalizing conduct without proof of criminal intent, and instead adopt Defendants Kim and Messenger's proposed jury instructions.[2]

---

[2] There is no reason to delay ruling on this important issue. *Contra* Opp. 1–2 n.1. The government concedes that § 201(b)(1) and § 201(b)(2) share the crucial requirement that the defendant act "corruptly," Opp. 1–2 n.1, and it would be untenable for this Court to give different instructions on the same issue in the two trials.

**CONCLUSION**

For the foregoing reasons and those stated in their opening objections, Defendants Kim and Messenger respectfully object to the government's proposed jury instruction for Bribery, listed as No. 51 in the government's proposed jury instructions for the trial of Adm. Robert Burke. (ECF No. 102-1 at 12-16.) The jury instruction should (1) specify that the government must prove that the defendant acted "corruptly" <u>and</u> that the defendant intended to be influenced in an official act, in exchange for the alleged bribe, and (2) define the term "corruptly" to mean that the defendant acted with consciousness of wrongdoing.

Respectfully submitted,

DATED March 11, 2025           */s/ William A. Burck*
                                William A. Burck

| | |
|---|---|
| Rocco F. D'Agostino (Bar No. NY0592) | William A. Burck (DC Bar No.: 979677) |
| 445 Hamilton Ave., Suite 605 | Avi Perry (DC Bar No.: 90023480) |
| White Plains, NY 10601 | Rachel G. Frank (DC Bar No.: 1659649) |
| Tel: (914) 682-1993 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | 1300 I Street NW, Suite 900 |
| | Washington, D.C. 20005 |
| *Counsel for Defendant Meghan Messenger* | Tel: (202) 538-8000 |
| | Fax: (202) 538-8100 |
| | williamburck@quinnemanuel.com |
| | aviperry@quinnemanuel.com |
| | rachelfrank@quinnemanuel.com |

Christopher Clore (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 5th Ave
New York, NY 10016
Tel: (212) 849-7000
Fax: (212) 849-8100
christopherclore@quinnemanuel.com

*Counsel for Defendant Yongchul "Charlie" Kim*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this date, a copy of the foregoing reply brief was electronically filed with the Clerk of the U.S. District Court for the District of Columbia via CM/ECF and served to all counsel of record via electronic mail.

                                                      /s/ *William A. Burck*
                                                  William A. Burck (DC Bar No.: 979677)

Dated: March 11, 2025