```
 1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2
       * * * * * * * * * * * * * * *    )
 3     UNITED STATES OF AMERICA,        )     Criminal Action
                                        )     No. 24-00265
 4                    Plaintiff,        )
                                        )
 5       vs.                            )
                                        )
 6     YONGCHUL "CHARLIE" KIM and       )     Washington, D.C.
       MEGHAN MESSENGER,                )     September 11, 2025
 7                                      )     9:52 a.m.
                      Defendants.       )
 8     * * * * * * * * * * * * * * *    )

 9

10                    TRANSCRIPT OF JURY TRIAL
              BEFORE THE HONORABLE TREVOR N. McFADDEN
11                  UNITED STATES DISTRICT JUDGE

12
       APPEARANCES:
13
       FOR THE GOVERNMENT:    REBECCA G. ROSS, ESQ.
14                            JOSHUA ROTHSTEIN, ESQ.
                              BRIAN KELLY, ESQ.
15                            UNITED STATES ATTORNEY'S OFFICE
                                FOR THE DISTRICT OF COLUMBIA
16                            601 D Street, Northwest
                              Washington, D.C. 20530
17

18     FOR THE DEFENDANT      WILLIAM S. BURCK, ESQ.
                KIM:          AVI PERRY, ESQ.
19                            BRETT RAFFISH, ESQ.
                              JOHN F. SCANLON, ESQ.
20                            QUINN, EMANUEL, URQUHART & SULLIVAN,
                                LLP
21                            1300 I Street, Northwest
                              Suite 900
22                            Washington, D.C. 20005

23

24     FOR THE DEFENDANT      REED BRODSKY, ESQ.
            MESSENGER:        GIBSON, DUNN & CRUTCHER, LLP
                              200 Park Avenue
25                            New York, New York 10166
```

```
1    REPORTED BY:              LISA EDWARDS, RDR, CRR
                               Official Court Reporter
2                              United States District Court for the
                                 District of Columbia
3                              333 Constitution Avenue, Northwest
                               Room 6706
4                              Washington, D.C. 20001
                               (202) 354-3269
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1              THE COURT:  Good morning.

2              MR. BURCK:  Good morning, your Honor.

3              MS. ROSS:  Good morning, your Honor.

4              THE COURTROOM DEPUTY:  This is Criminal Case

5    24-265, United States of America versus Yongchul "Charlie"

6    Kim and Meghan Messenger.

7              Counsel, please come forward to identify

8    yourselves for the record, starting with the Government.

9              MS. ROSS:  Good morning, your Honor.  Rebecca

10   Ross, Josh Rothstein and Brian Kelly on behalf of the United

11   States.

12             THE COURT:  Good morning, folks.

13             MR. BURCK:  Good morning, your Honor.  Bill Burck,

14   Avi Perry, Fritz Scanlon and Brett Raffish on behalf of

15   Mr. Kim, who's present.

16             THE COURT:  Good morning, gentlemen.

17             Good morning, Mr. Kim.

18             DEFENDANT KIM: Good morning, your Honor.

19             MR. BRODSKY:  And good morning, your Honor.  Reed

20   Brodsky with Ms. Messenger, who's present.

21             THE COURT:  Good morning, Mr. Brodsky.

22             Good morning, Ms. Messenger.

23             DEFENDANT MESSENGER:  Good morning.

24             THE COURT:  All right.  At 9:22, I received a

25   note:  The jury wishes to inform you that after thoroughly
```

1    reviewing the evidence and hearing each other's perspective,

2    we remain deadlocked.  We believe our views are

3    fundamentally contradictory.

4            Mr. Burck, I'll hear from you.

5            MR. BURCK:  Your Honor, our view is that this is

6    now the second deadlock note.  We've received no substantive

7    notes, no substantive questions from the jury.

8            It doesn't seem that they are confused about the

9    law or seeking guidance from the Court.  It seems that, as

10   they said in this note, that they are fundamentally in

11   different spots.

12           You read them an initial charge on Monday.

13   They've now had two full days to deliberate since.  They

14   haven't come back with any notes since then, substantive

15   notes, your Honor.

16           Our view is that a second charge at this point

17   would be without any real purpose other than to potentially

18   have them feel some greater level of coercion.

19           The issue is, I think, highlighted as well by the

20   fact that Juror No. 3, I believe it was, yesterday has been

21   informed that he will be released as of next Thursday.  And

22   that does sort of put a timeline on the case.

23           So we think that if there was a second deadlock

24   charge at this point in combination with that deadline, we

25   think that there will be a greater risk of coercion as to

1    this jury.

2          We also think it's important that every indication

3    has been, including from when the first juror -- I forgot

4    which number he was -- left that we had a sense that this

5    jury was not coming to a verdict anytime soon.  So it's been

6    quite a while, really almost from the beginning of

7    deliberations.

8          We don't see any basis to believe that they are

9    going to come to a verdict.  We obviously don't know what

10    the split is.  We don't want to try this case again, your

11    Honor.  But we're not sure there's really any other option

12    other than to seek and request a mistrial at this point.

13          THE COURT:  Okay.  Thank you, Mr. Burck.

14          Mr. Brodsky?

15          MR. BRODSKY:  Regrettably, your Honor, I come to

16    the same conclusion as Mr. Burck.  Recognizing, of course,

17    that this is like a slow drip of agony over the last several

18    days, every hour that passes by -- the best analogy is the

19    clock is like a blade for Ms. Messenger.  I think every hour

20    that passes by, every other hour, she breaks down.

21          I do recognize the problem with -- the possibility

22    of a retrial puts enormous strain as well.  But at this

23    juncture, given where we stand under all the facts and

24    circumstances I think Mr. Burck laid out, I think another

25    anti-deadlock instruction would be unfortunately unduly

1    coercive under the circumstances.  And we would ask for a

2    mistrial.

3             THE COURT:  All right.  Thank you, Mr. Brodsky.

4             Ms. Ross?

5             MS. ROSS:  Your Honor, the Government wants to be

6    very clear that there has been no prior deadlock

7    instruction.  The Government requested the deadlock

8    instruction; and that was not given over our objection.  We

9    sort of conceded it was okay to start with the softer

10   instruction first, with the understanding that the deadlock

11   instruction would come later.

12             And that is our position, that they have not

13   received an anti-deadlock instruction, and that should be

14   given now.

15             THE COURT:  So, Ms. Ross, I guess I'm struggling a

16   little bit with what would be gained at this point.  I agree

17   with you that that was not technically an anti-deadlock

18   instruction.  But we do have a jury who's come back to us

19   twice now saying that they aren't going to reach an

20   agreement.

21             I think I don't necessarily agree with Mr. Burck's

22   analysis on kind of coercion or the law.  But kind of as a

23   practical matter, this jury has been deliberating for a

24   pretty long time and, as he says, without any notes that

25   suggest that there's kind of some confusion that we can help

1    them on or they're struggling over the law, but just, you

2    know, I imagine you all have both done a very good job

3    putting on your cases.  And this strikes me as fundamentally

4    a question of intent and they just disagree.  That's kind of

5    how I read the tea leaves here.

6            MS. ROSS:  I think two responses to that, your

7    Honor.

8            One, there are two instructions for a reason.  One

9    is to encourage them to go back.  The anti-deadlock

10   instruction encourages them to try to work through their

11   issues.  I understand the jury has been at this for a while.

12   But there's a reason why these two instructions have been

13   kind of blessed in this Circuit, is because they can and

14   sometimes do help the jury come to an agreement.

15           And I think it is in the best interest of the

16   public, of both parties here, to try to avoid another trial

17   in this case.

18           And so I think we should use all available tools

19   at both parties' disposal and the Court's disposal to try to

20   avoid that outcome.  Certainly this is one option to try to

21   avoid that.

22           THE COURT:  Anything else, Ms. Ross?

23           MS. ROSS:  That's it.  Thank you, your Honor.

24           THE COURT:  I think I am going to declare a

25   mistrial.

1          I appreciate Ms. Ross's points.  As I say, I

2     disagree that it would be coercive to issue another

3     instruction at this point.  But looking back at the *Burke*

4     trial, it was three days of deliberation.  We've had about

5     five and a half days here.

6          The jury did come with a note saying that they

7     were at an impasse on Monday.  I agree with Ms. Ross that

8     the instruction I gave them was not the one that they

9     requested, and perhaps I should have given the one that they

10    requested.  But it did encourage the jurors to keep an open

11    mind.

12         And as I say, just having sat on this -- presided

13    over the trial and kind of reading the tea leaves from the

14    lack of notes from the jury, I think Mr. Burck is right that

15    there's just -- they disagree about the intent.  And it

16    seems like they've been there for a while.

17         So I'm going to declare a mistrial.

18         I'll call them out in a second.  I imagine you all

19    want to go back to talk with them afterwards?

20         MR. BURCK:  Your Honor, if we are able to, that

21    would be great.

22         THE COURT:  So I'll ask them if they'll stay

23    around.

24         Maybe we can avoid a crowd going back, Mr. Burck.

25         MR. BURCK:  Yes.

1          THE COURT:  But certainly at least an attorney

2     from each party is more than welcome to go back.

3          MR. BURCK:  Your Honor, Mr. Brodsky has raised one

4     issue.  If they're not willing for whatever reason to talk

5     to us, would the Court be willing to ask the foreperson for

6     a poll of the jury?

7          THE COURT:  So I feel like somebody always stays

8     around.  Right?  I mean, does that happen, where nobody --

9          MS. ROSS:  We are not sure, your Honor.

10          THE COURT:  I'm feeling pretty good that at least

11     somebody is going to stick around.  They don't seem -- yes.

12     People seem in good spirits.  So I'm not going to ask for a

13     specific poll.

14          MR. BURCK:  Thank you, your Honor.

15          THE COURT:  But once we get them out, I want you

16     to be able to go back quickly.  This is why I wanted to say

17     a couple things first.

18          These are not rulings.  But just kind of having

19     sat through the trial twice now, my inclination if we're

20     going to retry this would be that I would be inclined to

21     significantly limit evidence regarding how Next Jump's

22     training was received at DOD.

23          I understand the Government's theory, and I agreed

24     with it.  But I felt like we spent a lot of time hearing

25     from Government witnesses about how the Next Jump training

1    was bad and defense witnesses about how it was good.  And

2    the probative value, I think, at this point for these

3    Defendants seems pretty minimal.

4             So my inclination would be to agree now with the

5    defense initial view that that is not relevant and bar

6    testimony from either side on that issue.

7             Also, I think, having seen this trial, I would be

8    strongly inclined to bar evidence about the quick turnaround

9    of kind of the holiday contract.  I think the defense ably

10   pointed out that that was actually perhaps exactly the same

11   number of days that a prior contract was approved within.

12   And so, again, I think the probative value is pretty minimal

13   compared to the amount of time we spent hearing from various

14   witnesses about that.

15            So again, those are not rulings.  But while I'm

16   thinking about it and for you all to be thinking if we're

17   doing this again, I'd be looking to streamline any

18   subsequent trial that way.

19            And, Ms. Ross, I would love to hand you back your

20   many binders here.  So you all can have them rather than we

21   keep them.

22            Okay.  We can bring out the jury.

23            MR. PERRY:  Your Honor, will you permit me to go

24   back with Mr. Burck?

25            THE COURT:  So you two.  Two of the three of you.

```
 1    You can flip a coin or something.  And obviously,
 2    Mr. Brodsky.  Yes.
 3            MR. BURCK:  I don't think Mr. Perry trusts my
 4    note-taking skills.  I don't blame him.
 5            THE COURT:  Can the attorneys approach while we're
 6    waiting.  Bring your calendars.
 7            (Whereupon, the following bench conference was
 8    held:)
 9            THE COURT:  When is the Burke sentencing?
10            MS. ROSS:  It's the 16th or 17th.  The 16th, I
11    believe.  Or the 17th.
12            THE COURT:  Of October?
13            MS. ROSS:  It's next week at 2:00 p.m.
14            THE COURT:  Okay.
15            MR. BRODSKY:  Your Honor, if you're thinking about
16    scheduling something, could you give us the weekend to sort
17    of confirm with each other?  Maybe you could give us your
18    calendar and then we could try to figure out with our
19    clients what's --
20            THE COURT:  That's fine.  Why don't you talk with
21    Ms. Chaclan and propose a status conference; obviously,
22    after the sentencing.
23            MS. ROSS:  After sentencing.
24            MR. BURCK:  Thank you, your Honor.
25            (Whereupon, the following proceedings were had in
```

```
 1    open court:)
 2              THE COURTROOM DEPUTY:  Jury panel.
 3              (Whereupon, the jury entered the courtroom at
 4    10:08 a.m. and the following proceedings were had:)
 5              THE COURT:  Welcome back, ladies and gentlemen.
 6    You all may have a seat.
 7              Earlier this morning, I received a note from you
 8    saying:  The jury wishes to inform you that after thoroughly
 9    reviewing the evidence and hearing each other's perspective,
10    we remain deadlocked.  We believe our views are
11    fundamentally contradictory.
12              After consulting with the parties, I'm going to
13    reluctantly declare a mistrial and excuse you all from
14    further jury service in this matter.
15              Also, on behalf of the parties, I do want to thank
16    you.  I know you all have been very attentive, have pushed
17    back holidays, work, and done your best to provide justice
18    to all parties here.  And I want to thank you for your
19    service.
20              I'm going to excuse you in just a moment.
21              We'll of course be collecting that laptop.  If
22    there was anything on it that you put on that you do not
23    want the parties to see, maybe one of you can delete that.
24    You don't have to; I just am reminding you about that.  And
25    obviously, we'll collect your notebooks and destroy all the
```

1    notes.

2            The attorneys have requested the opportunity to

3    speak with some or all of you briefly afterwards.

4    Obviously, the prohibition on talking with them about the

5    case is now lifted.  You're welcome to talk with anybody you

6    would like.

7            I know they would find it helpful to get to talk

8    with you.  That is entirely up to you.  But if you're

9    willing to stick around for a couple minutes, I know that

10   they'd appreciate it.

11           Thank you, folks.  You're excused.

12           (Whereupon, the jury exited the courtroom at 10:10

13   a.m. and the following proceedings were had:)

14           THE COURT:  Ms. Chaclan, the attorneys are going

15   to talk over the weekend and will be back in touch with you

16   early next week about setting a status conference.

17           THE COURTROOM DEPUTY:  Okay.

18           THE COURT:  Anything further for the Government?

19           MS. ROSS:  No, your Honor.  Thank you.

20           THE COURT:  For defense?  Mr. Kim?

21           MR. BURCK:  No, your Honor.  Thank you very much.

22           THE COURT:  And Ms. Messenger?

23           MR. BRODSKY:  No, your Honor.  Thank you.

24           THE COURT:  Thanks, folks.

25           THE COURTROOM DEPUTY:  All rise.  This honorable

1    Court is adjourned.

2              (Proceedings concluded.)

1
2

**<u>CERTIFICATE</u>**

3                    I, LISA EDWARDS, RDR, CRR, do hereby

4     certify that the foregoing constitutes a true and accurate

5     transcript of my stenographic notes, and is a full, true,

6     and complete transcript of the proceedings produced to the

7     best of my ability.

8
9

10                   Dated this 11th day of September, 2025.

11

12                <u>/s/ Lisa Edwards, RDR, CRR</u>
                  Official Court Reporter
13                United States District Court for the
                    District of Columbia
14                333 Constitution Avenue, Northwest
                  Washington, D.C. 20001
15                (202) 354-3269

16
17
18
19
20
21
22
23
24
25