## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:24-cr-00265 (2)(3) (TNM)** |
| | : | |
| **YONGCHUL "CHARLIE" KIM and** | : | |
| **MEGHAN MESSENGER,** | : | |
| | : | |
| **Defendants.** | : | |

### UNITED STATES' OPPOSITION TO DEFENDANTS'
### MOTION *IN LIMINE* TO EXCLUDE EVIDENCE

The Defendants, Yongchul "Charlie" Kim and Meghan Messenger, seek an order precluding the government from presenting any testimony, evidence, or argument relating to (1) "the quality of Next Jump's products or services[,]" (2) "how those products and services were received by the Navy, except insofar as it was communicated directly to Mr. Kim and Ms. Messenger before Adm. Robert Burke approved the January 2022 contract[,]" and (3) "any alleged compressed time period in which the January 2022 contract was approved and signed." ECF No. 365 at 2.[1] The Court should deny Defendants' motion, and instead grant the government's Motion *In Limine* to admit limited evidence on those issues. *See* ECF No. 370.

### I.     Evidence Relating to the Poor Quality of and Negative Reaction to Next Jump's Products and Services Is Highly Relevant

Precluding the government from presenting any evidence concerning the fit and scalability of Next Jump's products for the Navy, and the negative reception at the Navy to those products, would omit evidence that is highly relevant to Kim's and Messenger's state of mind. As the government has previously explained, *see* ECF No. 201 at 9-12; ECF No. 370 at 2-10, the negative

---

[1] Defendants' Motion *In Limine* groups (1) and (2) together as a single topic, but in reality they are two separate, though related, issues.

opinion of Next Jump's products and training is relevant and highly probative first because it underscores that although Defendants were told by Navy personnel that Next Jump's products were a bad fit, they were so desperate for a "lucrative all navy deal" that they were willing to enter into a corrupt agreement with Burke to get it.

In support of their argument that negative opinions about Next Jump are irrelevant, Defendants apparently seek to lead the Court to believe that they were simply unaware of the problems with their products vis-à-vis the Navy.  But that is simply not true.  Just to take a few examples, in July 2019 a Next Jump employee emailed Kim and Messenger, among others, sharing "'rumors and hearsay' that some in [the] Navy are not satisfied with [Next Jump's] Task 1 performance … ."  *See* GOXEX 6.  In an April 2021 email to Messenger and others, Kim wrote, referring to the prior pilot program, that the "beta didn't quite work" and was "non-success[ful[,]" and "[a]fter seeing the [Next Jump] office, the next day we got word from Burke that he did not get the support from the CNO."  *See* GOXEX 34.  In September 2021, Burke emailed Kim and Messenger some "unfiltered Sailor feedback" from Navy personnel who had used Next Jump's product.  The feedback that Burke shared with Kim and Messenger was extremely negative and, based on that feedback and his own review of Next Jump's products, Burke bluntly informed Kim and Messenger that "the tool in and of itself does not stand on its own[,]" and "your current app-based approach … just does not seem to be sustainable or scalable for us."  *See* GOXEX 68.  This email directly caused Kim and Messenger to lure Burke to Next Jump's headquarters in New York City in November 2021, a meeting that resulted in a recommitment to the bribe scheme.  There was also testimony at the first trial that Defendants were aware of problems with their products within the Navy.  For example, Julier Beyler testified that she personally informed Defendants at

the conclusion of the earlier pilot program about some of the difficulties the Navy encountered in implementing Next Jump's product.  *See* 8/19/2025 AM Trial Tr. at 37:14-38:6.

Evidence such as this would allow a rational juror to conclude that Kim and Messenger were aware of the negative feedback at the Navy, or at the very least that their product was not a good fit, and that this knowledge, and their desperation for a "lucrative all Navy deal," led them to bribe Burke by exchanging a job for a contract.  Indeed, it appears that at least some jurors from the first trial did reach that conclusion, insofar as they told counsel that the negative opinions about Next Jump was compelling evidence that they considered in their deliberations.

Second, even setting aside what Kim and Messenger may or may not have known (they knew), again as previously explained by the government the poor fit and negative opinions about Next Jump also go directly to Defendants' co-conspirator's (Burke's) state of mind, which under well-settled law is it itself relevant to and inextricably intertwined with the charges against Kim and Messenger.  *See United States v. McPartland*, 81 F.4th 101, 115 (2d Cir. 2023) ("Evidence of a co-conspirator's state of mind may be relevant to explain how a criminal enterprise developed, to help the jury understand the basis for the coconspirators' relationship of mutual trust, or to complete the story of the crime on trial." (quotation marks and citations omitted)); *United States v. Sans*, 731 F.2d 1521, 1532 (11th Cir. 1984) (overruling defendant's objection that certain evidence admitted at trial was irrelevant because, *inter alia*, the evidence "was relevant to the issue of [the codefendant's] criminal intent regarding the conspiracy[, and s]ince [the codefendant] was an alleged coconspirator, his state of mind was relevant").  Evidence that Burke knew of the problems with Next Jump's products before he ordered the January 2022 contract, yet ordered the contract anyway, and that he knew the January 2022 training was poorly received, yet continued

advocating for Next Jump within the Navy and beyond in an effort to secure Defendants additional contracts, is inextricably intertwined with the charged conspiracy.

Defendants also draw an artificial line between negative feedback they received about their product from before when Burke ordered the January 2022 contract and after the contract was approved. Yet the charged conspiracy continued *after* the conclusion of the January 2022 training that Next Jump provided to Burke's command. As alleged in the Indictment, after securing that contract, as agreed on with Kim and Messenger and in furtherance of the conspiracy, Burke remained in the Navy and promoted Next Jump to other senior Navy officers as well as senior officials within other military bodies. *See* ECF No. 1 ¶ 45; *see also id.* ¶ 20 (charging the conspiracy as occurring at least from September 2020 through October 2022). The conspiracy did not end when Burke ordered the January 2022 contract—as established during the first trial, that was merely one "phase" of the criminal agreement. As such, Defendants' artificial line makes no sense. The negative opinions about Next Jump's January 2022 training are relevant and highly probative of the corrupt agreement. The failure of that training demonstrates that because of Defendants' corrupt agreement with Burke, and Burke's desperation for a job and a life outside of the Navy, he was willing to disregard the negative feedback (some of the worst feedback Amanda Kraus had ever seen) to carry out "phase two" of the corrupt agreement and promote Next Jump to other high ranking officials.

This Court understood the relevance of this evidence when it denied a similar Motion *In Limine* filed by Defendants prior to the first trial:

> Evidence that Next Jump's product was poorly received in the Navy is probative of the state of mind of the motivations of the Defendants. On an intuitive level, it certainly makes sense that the purveyor of a superior product would not need to offer a bribe to the decision-maker to approve it, while the purveyor of an inferior product might feel compelled to do so. It also makes sense that Admiral Burke as the decision-maker would be more inclined to demand something more from his

Co-Defendants … if the product they wanted him to approve was substandard and thus might raise questions internally at the Navy about his decision-making.

In other words, he's taking a much bigger risk approving something that is not going to be well-received, something that would be an inferior product, rather than the praise that he would be likely to receive from subordinates and superiors for approving a superior product.

7/25/2025 Pretrial Conf. Tr. at 80:16-81:8.

## II.    Evidence Relating to the Speed with which the January 2022 Next Jump Contract was Implemented Is Highly Relevant

For reasons previously explained by the government, evidence about the speed with which Next Jump's January 2022 contract was approved and finalized is also relevant and highly probative.  *See* ECF No. 370 at 10-11.  In short, this evidence matters because it indicates that Burke was not acting in the Navy's best interest, but rather was acting to carry out his end of the corrupt agreement when he issued an order to implement the contract with such speed that it was unprecedented in the eyes of other experienced Navy employees.  Moreover, evidence exists that Kim and Messenger were aware that Burke steamrolled his subordinates by ordering them to award a contract in a few weeks' notice.  For example, on December 20, 2021, Burke emailed Kim and Messenger, stating that his staff could not implement a contract by January 10, 2022.  *See* GOVEX 100.  The same day, Kim replied asking, "for the sake of speed," that Burke consider issuing the contract through alternate means.  *Id.*  Then, on December 21, 2021, Kim, copying Messenger, again told Burke that "we prefer to get this done as soon as possible[,]" to which Burke replied, "[w]e'll work with both and take the fastest route."  Evidence that Burke rammed through the contract over a condensed timeframe over the winter holidays is relevant to the charged conspiracy, as is the reasonable conclusion that a rational juror could reach that one of the reasons Kim and Messenger bribed Burke was because they knew he was uniquely situated to do so.

### III.    The Evidence that Defendants Seek to Exclude Is Not Unduly Prejudicial

Evidence concerning the difficulty of integrating Next Jump's products into the Navy, and the speed with which the January 2022 contract was implemented, undoubtedly clears the low bar established under the Federal Rules for relevance. *See* Fed. R. Evid. 401 ("Evidence is relevant if it has *any tendency* to make a fact [of consequence in determining the action] more or less probable than it would be without the evidence." (emphasis added)); *United States v. Moore*, 590 F. Supp. 3d 277, 283 (D.D.C. 2022) (noting Rule 401's "liberal relevance standard," and explaining that "[t]he degree of probative value required for evidence to be admissible under Rule 401 is 'very low'" (quoting *United States v. McVeigh*, 153 F.3d 1166, 1190 (10th Cir. 1998))); *United States v. Slatten*, 310 F. Supp. 3d 141, 145 (D.D.C. 2018) ("[E]vidence need not be dispositive of an element of the crime to be relevant, it must merely cross the low threshold prescribed by Rule 401.").

The question, then, is whether the "probative value [of that evidence] is *substantially outweighed* by a danger of … unfair prejudice, ... undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added); *see also United States v. Lieu*, 963 F.3d 122, 128 (D.C. Cir. 2020) (Rule 403 imposes a "high barrier to justify the exclusion of relevant evidence"); *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984) (even in close cases, Rule 403 "tilts … toward the admission of evidence"). Of course, the mere fact that the evidence may be harmful to the defense is not a basis for its exclusion. It is axiomatic that "all evidence offered by the prosecution in a criminal case is intended to be prejudicial." *United States v. Williams*, 271 F.R.D. 1, 2 (D.D.C. 2010). Consequently, courts must assess "whether the prejudice is 'unfair,'" and "whether the danger of 'unfair prejudice' *substantially* outweighs the probative value of the evidence." *Id.* (emphasis in original); *see also United States v. Loza*, 764

F. Supp. 2d 55, 58 (D.D.C. 2011) ("Under Rule 403, the test is 'unfair prejudice,' not prejudice or harm to the defense.").

Defendants complain that "the prejudicial effect is particularly acute here" because "[t]he clear point of the government's evidence concerning the alleged substandard quality of Next Jump's services and the purported abbreviated contract-approval timeline is to vilify Defendants or make them look foolish[.]"  ECF No. 365 at 6.  That is simply not so.  The evidence is being offered because it demonstrates that the January 2022 contract was part of a corrupt agreement between Kim, Messenger, and Burke.  It is being offered because it demonstrates that Kim's and Messenger's primary motivation was to get a revenue-generating contract with the Navy that would provide a foot in the door for other contracts, regardless of whether their products were a good fit for the Navy, and that they would do whatever it took to obtain that contract, even if it meant bribing a four-star Navy admiral.  And it is being offered to show that, but for the corrupt agreement, Burke never would have ordered the January 2022 contract in the first place, and certainly not over the repeated objections of his own trusted subordinates.  Burke's criminal intent is undoubtedly relevant to Kim's and Messenger's criminal intent, and is necessary for the jury to understand the nature of the charged conspiracy.

Furthermore, evidence concerning the difficulty of integrating Next Jump's products into the Navy, and the speed with which the January 2022 contract was implemented, does not inject something new and prejudicial into the case, such as violence or perversion, which might inflame the jury.  It is certainly not evidence of such an inflammatory nature that it could tip the scales in favor of exclusion under the demanding standard of Rule 403.  *See* ECF No. 201 at 12-15 (addressing similar arguments raised by Defendants before the first trial); 7/25/2025 Pretrial Conf. Tr. at 82:3-10 (finding that the evidence satisfied Rule 403 because it did not involve an

7

inflammatorily emotional issue, insofar as "[d]iscussion of low-quality leadership training products is unlikely to spur a strong emotional reaction or lead a jury to believe the Defendants are guilty because the quality of the training was low"). Even if the Court were to conclude that this evidence presented some "unfair prejudice," it still would not "substantially outweigh" the evidence's probative value. The balancing between probative value and prejudice leans toward inclusion. *See, e.g., United States v. Naranjo*, 710 F.2d 1465, 1469 (10th Cir. 1983) ("Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing."); *United States v. Morris*, 79 F.3d 409, 412 (5th Cir. 1996) ("Because Rule 403 requires the exclusion of relevant evidence, it is an extraordinary measure that should be used sparingly."); *United States v. Bradley*, 145 F.3d 889, 893 (7th Cir. 1998) (Rule 403 is not a tool designed "to permit the Court to 'even out' the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none.").

Defendants also argue that during the first trial the government "presented extensive, cumulative testimony about the quality of Next Jump's services[,]" and about "a purportedly abbreviated timeframe between the approval and execution of the January 2022 contract." ECF No. 365 at 3. Yet in their motion, Defendants cite to only a handful of lines of testimony from the trial transcripts from three government witnesses as constituting such "extensive, cumulative" testimony. *See id.* at 3, 6.

The appropriate course here would be to allow the government to present a limited subset of such evidence at the retrial, not to exclude it entirely. That is precisely what the government already proposes in its own Motion *In Limine* to Admit Evidence, ECF No. 370. Following such a streamlined, balanced approach would address the Court's concern from the first trial without

hamstringing the government by precluding wholesale the admission of necessary and important evidence of the co-conspirators' state of mind, which jurors already apparently found compelling.

**IV.    The Court Should Similarly Limit Evidence from Defendants that Their Products and Services were Well-Received**

Not only do Defendants seek to preclude the government from offering highly probative evidence, but they take it a step further in claiming they should still be "permitted to present argument and evidence that they were informed (repeatedly, by multiple sources) that their services were valuable, useful, or desired by the Navy[.]" ECF No. 365 at 8. Defendants' proposed course would fundamentally mislead the jury by presenting a skewed reality in which Next Jump's products and services were somehow an ideal fit for the Navy, despite extensive evidence to the contrary that, for the reasons already stated, speaks directly to Kim's and Messenger's state of mind in entering into a criminal conspiracy with Burke, speaks to Burke's own state of mind in entering into and implementing that corrupt agreement, and provides the jury with necessary context to understand the nature, scope, and motive behind that agreement. Defendants' desire to have their cake and eat it too would also contradict even the Court's contemplated course of action as to this evidence following the first trial. *See* 9/10/2025 AM Trial Tr. at 9:23-10:6 (describing evidence from Defendants about how Next Jump's products and services were good as being of equally minimal probative value as government evidence that it was bad, and expressing the Court's "inclination" to find that such evidence was not relevant and to "bar testimony from either side on that issue").

As the Court did in the first trial, to the extent that Defendants are again allowed to introduce evidence of positive reception by the Navy to Next Jump's services, then such evidence should be admitted only to the extent it rebuts the government's evidence that Defendants' struggles to deliver a workable product to the Navy contributed to their and Burke's state of mind

in entering a *quid pro quo*.  Moreover, any such evidence should be streamlined in the same manner that the government has proposed on its own behalf.  The parties should be limited to presenting only their most salient evidence on this point, as monitored by the Court during the trial, including through objections as to cumulativeness or going beyond the scope of the Court's pretrial orders.

## V.    Conclusion

For the reasons stated herein and any that may be raised in a hearing on pretrial motions, the Government respectfully requests that the Court deny Defendants' Motion *In Limine* to Exclude Evidence, ECF No. 365, grant the government's Motion *In Limine* to Admit Evidence, ECF No. 370, and admit limited evidence about (1) the quality of Next Jump's products and training provided to the Navy; and (2) the speed with which Next Jump's contract was approved and finalized.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By    _____/s/_____

Brian P. Kelly
Rebecca G. Ross
Sarah W. Ranney
Assistant United States Attorney
601 D Street N.W.
Washington, DC 20530
Office: (202) 252-4490